**In the United States District Court
for the District of Kansas**

---

**In re CCA Recordings 2255 Litigation,**
       **Petitioners,**

v.               Case No. 19-cv-2491-JAR-JPO

                (This Document Relates to Case No. 15-20078-JAR, *United States v. Desmond S. Gaines*, and Case No. 22-2469-JAR-JPO, *Desmond S. Gaines v. United States*)

**United States of America,**
       **Respondent.**

---

**MEMORANDUM AND ORDER**

Petitioner Desmond S. Gaines filed a Petition for Relief Under 28 U.S.C. 2255 (Doc. 192), alleging that the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications. As a remedy, he asks the Court to set this matter for an evidentiary hearing, and to vacate his conviction and discharge him. This motion has been fully briefed, including supplemental briefs recently filed by the parties,[1] and Petitioner has replied. For the reasons explained in detail below, the Court denies Petitioner's motion.

---

[1] Case No. 15-20078-JAR, Docs. 197, 200, 222. Case No. 19-2491-JAR, Docs. 1107, 1246. After this motion was filed in Petitioner's underlying criminal case and civil habeas case, the Court directed the parties to make all related filings in the consolidated case that contains the many motions under 28 U.S.C. § 2255 raising the same Sixth Amendment claims, Case No. 19-2491-JAR. Some of the briefs were filed in one and some were filed in both. The Court has considered them all. Unless otherwise indicated, the Docket Entry number references in this Order are to Petitioner's underlying criminal case.

**I.     Background**

Petitioner was arrested on drug and firearm charges on August 26, 2015, and was detained pending trial at Corrections Corporation of America ("CCA"). On April 1, 2016, Petitioner met with his attorneys, Assistant Federal Public Defenders Laquisha Ross and Kirk Redmond, in an attorney-client meeting room at CCA. At this meeting, they discussed matters related to legal advice or strategy.[2] Three days later, Ms. Ross notified the Court at a status conference that Petitioner intended to change his plea to guilty.[3] Petitioner and the Government had reached an agreement in which he would plead to a superseding information charging a single count of possessing cocaine base with the intent to distribute it.[4] The plea agreement would have been made under Federal Rule of Criminal Procedure 11(c)(1)(C), calling for an 84-month sentence. The Court set a change-of-plea hearing for May 16, 2016.

On May 3, 2016, Ms. Ross met with Petitioner at CCA in an attorney-client meeting room. At this meeting, they discussed matters related to legal advice or strategy. The following week, Petitioner notified the Court that he no longer wished to change his plea; so the Court converted the May 16 hearing into a status conference. At that status conference, Petitioner requested a trial date. The prosecutor, Terra Morehead, advised the Court about the plea deal and represented that she had not received the drug analysis back at the time the plea agreement was reached, although she anticipated that it would "far exceed the 28-gram limit."[5] Ms. Morehead also indicated that because Petitioner had a prior drug trafficking conviction, it would warrant her filing "an 851 notice," which would mean he faced "not less than ten years on count

---

[2] Doc. 192-1 ¶ 7; Doc. 192-2 ¶ 7.

[3] Docs. 21–22.

[4] Doc. 136 at 3:4–5:6.

[5] *Id.* at 4:5–11; *see* 21 U.S.C. § 841(b)(1)(B).

2

1 and then the consecutive five-year sentence for the 924(c) charge."[6] She concluded that "[Petitioner] can certainly have a trial, but the government is going to be prepared to go forward with all of the testing and obviously going for the maximum amount of time that we can potentially get with Mr. Gaines."[7] Nonetheless, Petitioner advised the Court that he wished to proceed to trial.[8]

On September 22, 2017, Petitioner was convicted by a jury on three counts of possessing a controlled substance with the intent to distribute it, one count of possessing a firearm in furtherance of a drug-trafficking offense, and one count of possessing a firearm after a felony conviction.[9] In December 2017, the Court sentenced Petitioner to a mandatory-minimum sentence of 120 months on Count 1, concurrent with the same sentence on Counts 2, 3, and 5.[10] He was sentenced to a mandatory-minimum 60-month term of imprisonment on Count 4, consecutive to his sentence on the other counts, for a total of 180 months' imprisonment. The Court later granted two motions by Petitioner for a sentence reduction. First, the Court granted a motion under the compassionate-release statute, reducing his sentence on Counts 1, 2, 3, and 5 from 120 months to 46 months, consecutive to 60 months on Count 4, for a new controlling sentence of 104 months.[11] Second, the Court reduced his supervised release term from eight to four years.[12]

---

[6] Doc. 136 at 4:12–25.

[7] *Id.* at 5:25–6:4.

[8] *See generally* Doc. 137 (July 5, 2016 status conference transcript).

[9] Doc. 117.

[10] Doc. 124 at 3.

[11] Doc. 195.

[12] Doc. 196. Petitioner was released in May 2023, but in May 2025, he was arrested for failure to comply with the terms of his supervised release. On June 12, 2025, the Court revoked Petitioner's supervised release and sentenced him to 12 months and 1 day imprisonment. Doc. 217.

In August of 2016, this Court discovered in a different case, *United States v. Black*,[13] that the United States Attorney's Office ("USAO") for the District of Kansas had obtained soundless video recordings from the attorney visitation rooms at CCA. The *Black* case charged multiple defendants with drug and contraband trafficking inside CCA. The investigation included obtaining audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA. These soundless videos include the two meetings between Petitioner and his counsel on April 1, 2016 and May 3, 2016. Ms. Morehead attests that she was not aware that specific recordings of this Petitioner and his counsel in the CCA attorney-client meeting rooms existed. She attests that she did not request or ask anybody else to request the video recordings once she learned that the government had possession of them. And she attests that she did not view either recording of this Petitioner.[14]

The Court ultimately determined in the *Black* case that the government's possession of the video recordings began when the United States Secret Service picked up DVR 6 from CCA on May 17, 2016.[15] There is no dispute that the USAO disgorged the video recordings to the Court on August 9, 2016. Nor is there evidence that the government maintained copies of the video recordings after that date.[16]

The Court eventually conducted a full evidentiary hearing on all pending matters in *Black* in October and November 2018. And on August 13, 2019, the Court issued the *Black* Order, which detailed, among other things, the government's view that soundless video recordings are not protected communications and rejected the government's argument that the communication

---

[13] Case No. 16-20032-JAR [hereinafter *Black*].

[14] Doc. 197-1.

[15] *Black*, Doc. 784 at 13.

[16] Case No. 19-2491-JAR, Doc. 546 (Consolidated Petitioners' Notice of Errata withdrawing any such allegations individually or collectively advanced).

in the videos is too rudimentary to discern whether it involves legal advice or strategy or to disclose the content of any accompanying verbal communication.[17]

The Order addressed the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[18] The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit's then-governing decision in *Shillinger v. Haworth*,[19] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by any legitimate law enforcement interest.[20] Under *Shillinger*, once those elements are established, prejudice is presumed.[21] The Court further determined that the soundless videos can constitute privileged attorney-client communications if an individual defendant could make certain threshold showings.[22]

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of more than 100 petitioners' Sixth Amendment claims and for consolidated discovery.[23] As part of these individual § 2255 motions, the Court advised that it would require attorney affidavits in the cases involving the soundless videos to make the threshold showing that the nature and purpose of the meeting(s)

---

[17] *Black*, Doc. 758 at 164–65.

[18] *Id.* at 145–62.

[19] 70 F.3d 1132 (10th Cir. 1995), *overruled by United States v. Hohn*, 123 F.4th 1084 (10th Cir. 2024), *cert. denied*, 2025 WL 2906501 (Oct. 14, 2025).

[20] *Black*, Doc. 758 at 162 (citing *Shillinger*, 70 F.3d at 1142).

[21] *Id.*

[22] *Id.* at 164–66.

[23] Doc. 1.

were within the ambit of protected communication, including but not limited to defense preparation, plea negotiations, or review of discovery. Petitioner's motion followed, attaching the requisite attorney affidavits.[24]

## II.    Discussion

Petitioner moves to vacate and discharge based on the structural-error rule in *Shillinger*. His motion argues that the four elements of a *Shillinger* Sixth Amendment violation are met here, so he is not required to show prejudice resulting from the intrusion. The Court held this case in abeyance while the Tenth Circuit considered the government's challenge to the *Shillinger* decision that governed the Sixth Amendment inquiry in this case.[25]

On December 16, 2024, the Tenth Circuit, sitting en banc, overruled *Shillinger* in *United States v. Hohn*.[26] The appellant in *Hohn* filed a petition for certiorari before the Supreme Court, which was recently denied.[27] In *Hohn*, the Tenth Circuit comprehensively reconsidered *Shillinger* in light of Supreme Court precedent on structural error. It held "that a Sixth Amendment violation of the right to confidential attorney-client communications requires the defendant to show trial prejudice resulting from the government's intrusion into the attorney-client relationship, even when the intrusion was purposeful and done without any law-enforcement justification."[28] After the United States Supreme Court denied Hohn's petition for certiorari on October 14, 2025, this Court directed the parties to file supplemental briefs addressing how the Tenth Circuit's decision in *Hohn* impacted the remaining issues in this case.

---

[24] Docs. 192-1, 192-2.

[25] *See* Case No. 19-2491-JAR, Doc. 1235.

[26] 123 F.4th 1084 (10th Cir. 2024), *cert. denied*, 2025 WL 2906501 (Oct. 14, 2025).

[27] *Id.*

[28] *Id.* at 1109.

In those supplemental briefs, both parties confirm that *Hohn* is dispositive because Petitioner relies on the structural error rule to establish prejudice in this case.[29]

Assuming that Petitioner is able to establish the other elements of his Sixth Amendment claim, he concedes that he is unable to demonstrate prejudice from the government's intrusion into his two confidential communications with his counsel. Petitioner's prejudice argument hinges on the timing of the meetings and the government's possession of the CCA videos generally. He points to the fact that he decided not to enter into the negotiated plea agreement with the government one day before the government took possession of the videos in *Black*. But Petitioner fails to explain how this temporal proximity alone creates an inference of prejudice, particularly since Petitioner's meetings with his attorneys occurred almost 18 months before his trial commenced. And even assuming that the government accessed and watched the videos, the earliest it could have done so was May 17, 2016, the day before the scheduled change-of-plea hearing when Petitioner decided not to go through with the plea agreement and instead proceed to trial.

*Hohn* makes clear that Petitioner must "tether governmental intrusion to a realistic possibility of injury from the *use* of confidential communications at trial."[30] And, "not all attorney-client conversations contain information that would prejudice the defendant if used at trial."[31] The Court finds this to be particularly true in the context of soundless video recordings. Petitioner needed to "connect something that he and his attorney discussed . . . to anything used during the criminal proceedings that either disadvantaged him or advantaged the prosecution."[32]

---

[29] Gaines submitted the video of his attorney-client meetings to the Court in camera on December 10, 2025.

[30] *Hohn*, 123 F.4th at 1112.

[31] *Id.* at 1108 n.25.

[32] *Id.* at 1110.

In this case, he would need to connect something that he and his attorney visually did to something used at trial. There is no evidence in the record that suggests or allows the Court to infer that the government used the soundless video recordings at his trial or gleaned something from the recordings that gave it an advantage or that gave Petitioner a disadvantage.

It is Petitioner's burden to demonstrate prejudice,[33] and he admits that he cannot do so.[34] In light of the court's holding in *Hohn* overruling *Shillinger*, Petitioner's motion must be denied for failure to demonstrate prejudice associated with any Sixth Amendment intrusion that may have occurred.[35] And given that Petitioner declined to demonstrate even a minimal amount of prejudice, no evidentiary hearing is warranted.[36]

### III. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[37] To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[38] For the reasons stated above, the Court finds that Petitioner has not made

---

[33] *Id.*

[34] Case No. 19-2491, Doc. 1246 at 3 ("*Hohn* is the death-knell for Mr. Gaines's Motion—at least in front of this Court.").

[35] Because Petitioner's motion is foreclosed by *Hohn*, the Court does not reach the procedural defenses raised by the government. Assuming those defenses are not meritorious, Petitioner would not be able to establish a Sixth Amendment claim.

[36] *Hohn*, 123 F.4th at 1116–17 (citing *United States v. Kelly*, 790 F.2d 130, 137 (D.C. Cir. 1986)).

[37] 28 U.S.C. § 2253(c)(2).

[38] *Saiz v. Ortiz,* 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)).

this showing and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Desmond Gaines's Petition for Relief Under 28 U.S.C. 2255 (Doc. 192) is **denied** without an evidentiary hearing. Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: December 18, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
